UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
BERKSHIRE CAPITAL GROUP, LLC, and,⠀⠀⠀⠀⠀:
RICHFIELD HOSPITALITY, INC.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀:⠀⠀⠀⠀06 Civ. 13009 (PAC)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:⠀⠀⠀⠀<u>OPINION & ORDER</u>
⠀⠀⠀-⠀⠀against -⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
PALMET VENTURES, LLC, MICHAEL⠀⠀⠀⠀:
MOYER, and CHICAGO TITLE & LAND⠀⠀⠀:
TRUST COMPANY,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Berkshire Capital Group LLC ("Berskhire") and Richfield

Hospitality Inc. ("Richfield") allege that Defendants Palmet Ventures, LLC, ("Palmet"),

Michael Moyer ("Moyer") and Chicago Title & Land Trust Company ("Chicago Trust")

breached the exclusive negotiation provision of a Letter of Intent ("LOI") relating to the

sale of the Hotel Allegro, located in Chicago, Illinois ("the Hotel"); and breached the

implied duty of good faith and fair dealing created by that provision.  Defendants move to

dismiss the claims for lack of personal jurisdiction, improper venue, and failure to state a

claim, pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6) and 28 U.S.C. § 1391(a).  In the

alternative, Defendants move to transfer the action to the Northern District of Illinois

pursuant to 28 U.S.C. §1404(a).  The Court grants Defendants' motion pursuant to Fed.

R. Civ. P. 12(b)(2) and dismisses this action for lack of personal jurisdiction.

# BACKGROUND[1]

Berkshire is a Delaware limited liability company with its principal place of business in New York City.  Richfield is a corporation organized and with its principal place of business in Colorado.  Palmet is a limited liability company, organized and with its principal place of business in Chicago, Illinois.  Moyer is a managing member of Palmet, and Chicago Trust is a trust organized under Illinois law.  Palmet and Chicago Trust own the Hotel, with Chicago Trust holding the deed.  The hotel is managed, by contract, by non-party Kimpton Hotels and Restaurants ("Kimpton").

In February 2006, Plaintiffs' representatives approached Moyer about acquiring the Hotel, and were informed that Kimpton had a right of first offer.  Negotiations between Kimpton and Palmet failed, however, and on April 5, 2006, Kimpton's right of first offer expired.   On or about April 6, 2006, Palmet informed Plaintiffs of its termination of negotiations with Kimpton.  Plaintiffs then drafted the LOI at issue in this case.  The LOI was signed by Plaintiff Berkshire's Managing Principal, Joseph Esmail ("Esmail") on behalf of his company and sent to Defendant Palmet on April 6, 2006.  Moyer signed the LOI on behalf of Palmet in Chicago on April 18, 2006 and returned it by fax to New York.

## I. Relevant Terms of the LOI

This action is based on the purported breach of the exclusive negotiation provision of the LOI which states:

> Seller agrees that it shall negotiate exclusively with Buyer during the 45 day period following receipt by both parties of the executed copy of this letter (the "Exclusive Negotiation Period"), but Seller is not precluded

---

[1] Except where expressly noted, the following facts are drawn from the allegations of the Complaint, which are treated as true for purposes of this motion to dismiss, and from the LOI, which is incorporated in the Complaint by reference.  Sources will be cited only where quoted.

from receiving unsolicited offers during the Exclusive Negotiation Period;
provided, however, during the Exclusive Negotiation Period, Seller shall
not negotiate and/or accept any such received offers.

Affidavit of Michael A. Moyer ("Moyer Aff."), Ex. 1 ("LOI"), 1.  The LOI defined the

"Buyer" as Berkshire and the "Seller" as Palmet. Id.  While the terms of the LOI were

generally non-binding expressions of the parties' intentions, and the acquisition depended

on the parties' execution of a "Definitive Agreement," the exclusive negotiation and

expenses provisions of the LOI were "agreed to be fully binding and enforceable against

Buyer and Seller…and shall survive the termination of this letter." Id. at 3.  Pertinent to

this motion is the LOI's choice of law provision which provides in full:

> **Choice of Law.**  This letter shall be deemed to have been made in, and shall
> be subject to and construed in accordance with, the internal laws of the state of
> New York.  The Definitive Agreement shall be subject to and construed in
> accordance with the laws of the state of Illinois.

## II. Post-LOI Communications

Following the execution of the LOI, Plaintiffs commenced their due

diligence efforts and the parties continued to negotiate towards the final terms of the

acquisition.  This process continued through May into June at which point, according to

Plaintiffs, "the Exclusive Negotiation Period under the LOI was understood to be

extended and was extended by [Palmet and Berkshire] into August 2006." Compl. ¶ 20.

On August 10, 2006, Moyer informed Plaintiffs that the exclusive negotiation period was

over and on September 18, 2006, Moyer informed Plaintiffs via email that Palmet had

reached an agreement to sell the Hotel to ING.  Plaintiffs allege that the contract with

ING could not have been negotiated within the time frame, unless Defendants had

violated the 45 day exclusive period for negotiation.

**III. Additional Facts Concerning Personal Jurisdiction[2]**

Defendants provide further details of Moyer's communication with Berkshire on August 10, 2006 through Moyer's own affidavit and the attached letter referred to in the Complaint.  The letter, sent to Esmail by email, <u>see</u> Affidavit of Michael A. Moyer ("Moyer Aff."), ¶ 27, notes that "the Exclusive Negotiation Period outlined in the Letter of Intent has expired." <u>Id.</u> at Ex. B.   The letter further notes that Moyer had "been approached by other parties regarding a sale" and that he would be exploring those possibilities. <u>Id.</u>  Esmail also submits a declaration, in which he declares that during the negotiations with Defendants following the execution of the LOI, "there were, as would be expected, e-mails and telephone calls that came from and to the New York offices" of Plaintiff Berkshire Capital Group, LLC."  Declaration of Joseph Esmail ("Esmail Dec."), ¶ 4.

**DISCUSSION**

**I. Rule 12(b)(2) Standard**

A motion to dismiss under Rule 12(b)(2) will be granted where the court lacks personal jurisdiction over the moving party. <u>See</u> Fed. R. Civ. P. 12(b)(2).  While Plaintiffs bear the burden of demonstrating personal jurisdiction over the Defendants, their initial burden is low and they need only make a <u>prima facie</u> showing to avoid dismissal.  <u>See</u> <u>Marine Midland Bank, N.A. v. Miller</u>, 664 F.2d 899, 904 (2d Cir.1981).  In addition, "[t]he pleadings and affidavits are to be considered in the light most favorable to the plaintiff." <u>A.C.K. Sports, Inc. v. Doug Wilson Enterprises, Inc.</u>, 661 F.Supp. 386, 390 (S.D.N.Y. 1987) (citations omitted).  A district court sitting in diversity

---

[2] These facts are drawn from the Declaration of Joseph Esmail ("Esmail Dec.") and the Affidavit of Michael A. Moyer ("Moyer Aff.") and accompanying exhibits.

has personal jurisdiction over a defendant only when such jurisdiction exists under the law of the forum state. See Arrowsmith v. United Press International, 320 F.2d 219, 223 (2d Cir.1963).

## II. Lack of Personal Jurisdiction

The parties agree that under New York law personal jurisdiction exists, if at all, pursuant to N.Y. C.P.L.R. § 302(a)(1) which provides that jurisdiction is proper if Defendants "transact[] any business within the state," and if the subsequent action arises as a result of that New York transaction.  See A.C.K. Sports, Inc., 661 F.Supp. at 390. Thus, § 302(a)(1) "extends the jurisdiction of New York state courts to any nonresident who has 'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws....'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999) (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 18 (1970)) (alteration in original).  In considering whether the exercise of personal jurisdiction is appropriate, the court must consider the "totality of the defendant's contacts within the forum state." Hutton v. Priddy's Auction Galleries, Inc., 275 F.Supp.2d 428, 439 (S.D.N.Y. 2003) and must concern itself with "a certain quality, rather than a specific quantity, of contacts with New York." Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F.Supp. 1251, 1259 (S.D.N.Y. 1995).  Having done so here, the Court finds that Plaintiffs have not made the requisite prima facie showing of personal jurisdiction under N.Y.C.P.L.R. § 302(a)(1).

Plaintiffs argue that jurisdiction is appropriate for three reasons: (1) the "Choice of Law" provision of the LOI requiring that it "be deemed to have been *made in*, and shall be subject to and construed in accordance with the internal laws of the state of

New York," LOI at 3 (emphasis added), (2) the assertion that Moyer sent an email on September 18, 2006 informing Berkshire that it had reached an agreement with ING, Compl. ¶ 34, and (3) Esmail's declaration that there were "emails and telephone calls that came from and to the New York offices" of Berkshire. Esmail Dec. ¶ 4.

Plaintiffs place the greatest weight on the LOI's choice of law provision. While that is a relevant factor, it is certainly not dispositive on the issue of whether defendants were transacting business in New York sufficient to create personal jurisdiction under §302(a)(1). In Aero-Bocker Knitting Mills, Inc. v. Allied Fabrics Corp., 54 A.D.2d 647 (1st Dep't 1976) (hereinafter "Aero-Bocker"), a California defendant placed an ad in *Women's Wear Daily* seeking offers to supply various materials. A New York supplier reached an agreement by telephone, entered into a contract, and shipped the goods from New York to California. The California buyer defaulted and the plaintiff instituted its action in New York based on the contract language which was almost identical to—indeed stronger than—the language at issue here. The provision in Aero-Bocker read: "[C]ontrolling [L]aw: [t]his contract shall be deemed to have been made in New York and shall be governed and construed in accordance with the laws of the State of New York." Id. At 648. The Court held that the language did not confer jurisdiction. Under Aero-Bocker, the choice of law provision in this case is clearly not enough to sustain jurisdiction. While Plaintiffs argue that Aero-Bocker is old law, it has never been criticized and has certainly not been overruled. It is still the law in New York.

Aero-Bocker holds that the place of contract is only one factor in determining whether business was transacted within New York, and by itself does not

constitute the transaction of business.  See also Galgay v. Bulletin Co., Inc., 504 F.2d 1062, 1065-66 (2d Cir. 1974) (dismissing the case for lack of personal jurisdiction, despite the New York execution of a contract containing a New York choice of law clause, where defendant did not physically execute the contract in New York).

Plaintiffs urge that there are other factors present here which sustain New York jurisdiction.  Plaintiffs mistakenly rely on their own activities in New York.  Those acts do not determine the issue.  The question turns on what the Defendants did in the forum state.  Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F.Supp. 1251, 1262 (S.D.N.Y. 1995) ("The appropriate focus of an inquiry under CPLR §302(a)(1) is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did.").  Did the Defendants purposely avail themselves of the privilege of conducting activities within the state of New York?  The Defendants transacted no business in New York.

Plaintiffs rely primarily on two recent cases to assert that Defendants' conduct meets the requirement for transacting business.  In Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) (hereinafter "Sunward"), the Second Circuit adopted a multi-factored "totality of the circumstances" test for determining whether the exercise of personal jurisdiction is appropriate over a particular defendant[3]:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New

---

[3] The "totality of the circumstances" test for "transacting business" within the meaning of N.Y. C.P.L.R. §302(a)(1) is a commonly articulated test in New York State and federal case law.  Indeed, numerous cases expound on the meaning and application of the "totality of the circumstances" analysis.  See, e.g., Farkas v. Farkas, 830 N.Y.S.2d 820 (2d Dep't 2007); Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F.Supp. 1251, 1259 (S.D.N.Y. 1995); United States Theatre Corp. v. Gunwyn/Lansburgh Ltd. Partnership, 825 F.Supp. 594, 596 (S.D.N.Y. 1993) ("Whether or not the contacts are of the appropriate nature must be determined by an analysis of the totality of the circumstances").  While Sunward is a recent Second Circuit case, it does not break new ground, or point to a "new way."  It simply applied existing law.

> York business, the defendant has visited New York for the purpose of
> meeting with parties to the contract regarding the relationship; (iii) what
> the choice-of-law clause is in any such contract; and (iv) whether the
> contract requires franchisees to send notices and payments into the forum
> state or subjects them to supervision by the corporation in the forum state.

Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004).  Plaintiffs argue

that Defendants meet these standards, but in fact only the choice of law clause supports

jurisdiction and that is not sufficient in and of itself to sustain jurisdiction.  Clearly

nothing in the LOI required notices, payments, or supervision associated with New York,

and while certain provisions of the LOI were to survive its termination, none of them

create any continuing obligations on the parties sufficient to constitute "an ongoing

contractual relationship" between Defendants and Berkshire.  Moreover, while the LOI

was executed by Plaintiffs in New York and Plaintiffs have their offices here, Defendants

signed and returned the LOI from their Chicago office and all face-to-face negotiations

were carried out in Illinois.  Defendants never visited New York and the only real

presence in New York is Plaintiffs.  Sunward does not support personal jurisdiction.

Indeed, it points to the opposite conclusion.

Plaintiffs also rely on Deutsche Bank Securities, Inc. v. Montana Board of

Investments, 7 N.Y.3d 65 (N.Y. 2006) (hereinafter "Deutsche Bank") for two

propositions: first, that the "New York Court of Appeals upheld long arm jurisdiction

based solely on contacts made through electronic instant messaging" and second, that "a

defendant can transact business in New York without being physically present in [the

state]."  Plaintiffs' Brief at 10.  But the facts of Deutsche Bank are so different that the

case is inapposite.  The bond sale at issue in Deutsche Bank could only have been

executed in New York.  Deutsche Bank, 7 N.Y.3d at 71-2.  Moreover, in the 13 months

prior to the transaction at issue, the defendant had engaged in eight other bond transactions with the same New York office.  Id.  Such continuous contact with the New York bond broker and the New York office meant that the defendant had "avail[ed] itself of the benefits of conducting business [in New York], and thus had sufficient contacts with New York" to make the exercise of personal jurisdiction appropriate.  Id.  Here, Defendants entered into a single, discrete agreement with a New York entity regarding a property in Illinois.  Defendants did not have a continuous and ongoing relationship with Plaintiffs in New York, and never set foot in New York.  If the underlying transaction were to occur, it would have to be in Illinois.

These cases are not a "new way," as Plaintiffs argue, but a mere application of existing law.  Plaintiffs cite no case where emails and phone calls originating outside New York about a transaction which could occur only out of state have permitted the assertion of New York jurisdiction over out of state entities.  The emails recited in Esmail's affidavit do not command a different result.  The September 18 email constituted the official termination of a prospective business relationship; by sending the email, Defendants were, if anything, *declining* the "benefits and protections" of New York's laws.

Other cases, which Plaintiffs do not adequately distinguish, fully support the Court's conclusion that there is no personal jurisdiction.  In Presidential Realty Corp. et al. v. Michael Square West, Ltd., et al., 44 N.Y.2d 672 (N.Y. 1978), the plaintiff, a New York based entity, alleged a breach of contract for the sale of real property located in Mobile, Alabama.  Plaintiffs urged the Court of Appeals to find that it had personal jurisdiction over defendants based on a meeting attended by both plaintiffs and

defendants at plaintiff's New York office, at the conclusion of which the defendants signed a modification agreement.  The Court of Appeals held that there was "no proof of any contacts with this State other than the fact that the modification letter and the agreement were signed in New York" and found that those contacts alone were "not sufficient to confer jurisdiction."  Id. at 673-674.  See also International Customs Assocs., Inc. v. Ford Motor Co., 893 F.Supp.1251 (S.D.N.Y. 1995) (notwithstanding a New York choice of law provision, negotiations conducted by email, facsimile, and telephone between a Taiwanese party and a New York party held not sufficient to support personal jurisdiction in New York: "[t]elephone calls and correspondence sent into New York by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction.").  Id. at 1260.

The Court finds that the Defendants did not transact business in the State of New York within the meaning of N.Y. C.P.L.R. §302(a)(1).  Accordingly, the Court may not assert personal jurisdiction.

**CONCLUSION**

Defendants' motion to dismiss for want of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is GRANTED, and the Complaint is dismissed.  The Clerk of the Court is directed to close out this case.

Dated:  New York, New York
        September 21, 2007

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

defendants at plaintiff's New York office, at the conclusion of which the defendants signed a modification agreement. The Court of Appeals held that there was "no proof of any contacts with this State other than the fact that the modification letter and the agreement were signed in New York" and found that those contacts alone were "not sufficient to confer jurisdiction." Id. at 673-674. See also International Customs Assocs., Inc. v. Ford Motor Co., 893 F.Supp.1251 (S.D.N.Y. 1995) (notwithstanding a New York choice of law provision, negotiations conducted by email, facsimile, and telephone between a Taiwanese party and a New York party held not sufficient to support personal jurisdiction in New York: "[t]elephone calls and correspondence sent into New York by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction."). Id. at 1260.

The Court finds that the Defendants did not transact business in the State of New York within the meaning of N.Y. C.P.L.R. §302(a)(1). Accordingly, the Court may not assert personal jurisdiction.

## CONCLUSION

Defendants' motion to dismiss for want of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is GRANTED, and the Complaint is dismissed. The Clerk of the Court is directed to close out this case.

Dated: New York, New York
      September 21, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

10